Good morning. May it please the court, counsel. My name is Emily Kingston and I represent the taxpayers in this case. These taxpayers are single individuals who purchased two residences together with cumulative mortgage and home equity indebtedness of over $2.2 million. They each paid interest on these debts and deducted those payments on their individual tax returns for tax years 2006 and 2007. The Internal Revenue Service rejected portions of the amounts claimed by the taxpayers under the limitations that are contained in Section 163 of the Internal Revenue Code. The tax court upheld the IRS's determination under a convoluted reading of the plain language of the statute. Counsel, whatever we're going to do with the language of the statute, it strikes me that it's anything but plain. I'm confident both sides will be making textual arguments. It's just not clear to me that either side is going to be able to argue that there's plain text here. I would like to reserve three minutes for rebuttal in this case. Let's look at the plain language of the statute. Section 163H3B2i reads $1 million limitation. The aggregate amount treated as acquisition indebtedness for any period shall not exceed $1 million, parenthesis $500,000 in the case of a married individual filing a separate return. Similarly, Section 163H3C2i says that the limitation is the aggregate amount treated as home equity indebtedness for any period shall not exceed $100,000, and in the parenthetical section, $50,000 in the case of a separate return by a married individual. So the issue in this case is does this $1.1 million limitation apply on a per taxpayer or a per residence basis? Or more practically speaking, is the $550,000 limit expressly provided in the parenthetical provisions of these two statutes applicable to single taxpayers who happen to co-own a qualified residence? The tax court said yes, but that determination was an error and essentially ignored the plain language of the statute. So I don't see anything in, say, let's just look at little 2i, that says that the debt is allocated based on presumed ownership interest in the residence, which I understand is what your argument is. Yes. So I don't see that language in that section. So it doesn't refer to that. Well, there is no reference in this particular provision to the residence, but there is a specific reference to the taxpayer referencing the married individual filing separately. So this says, well, the parenthetical, I take it, is not applicable because we don't have in this case a married individual filing a separate return. That's correct. So if I just look at the language minus the parenthetical, it talks about the aggregate amount treated as indebtedness, but doesn't say anything about it's allocated between taxpayers based on their presumed interest in the property. That's correct. Is that correct? That is correct, but the distinction here is that when you have a single taxpayer, that taxpayer is treated as one taxpayer. If there are two single taxpayers who happen to co-own a residence that is a qualified residence, meaning that they live in it as their principal residence, they're considered two taxpayers. Married taxpayers, on the other hand, are considered one taxpayer, which is the reason for this limiting language to limit it to the five million. So why does this tell me, though, that it's allocated that debt, because here there was a single loan and there was a, each taxpayer, I guess, as joint tenants had one half interest in the property, but there was a single loan and nothing in this language tells me that the loan or the debt should be allocated between taxpayers. I guess what I'm getting at is, in the absence of anything directing that interpretation, why wouldn't we just defer to the IRS's interpretation of this language? The IRS's interpretation of the language is incorrect, and the reason for that is that there is nothing in this language that refers to single taxpayers. There's no limit on single taxpayers, and if they're filing separate returns, which they are, they are each treated as a single taxpayer. This provision, the limitation that's contained in this provision, relates to a taxpayer, and so I don't see any problem with that. I mean, so the two taxpayers each file their separate return, but there's only a single debt, and so the limitation applies. I mean, I guess I don't see any problem with that, at least with this language. It wouldn't be inconsistent. So I didn't see anything in the IRS's interpretation that was inconsistent with that language. It may not be the best interpretation. I know that's your position, but I guess I don't see why it's not a permissible interpretation. Well, I think that what is wrong in the IRS's interpretation and the government's interpretation and the tax court's interpretation is that what this does is ignore, in essence, how you are entitled to claim acquisition and debt-induced deductions. That is dependent on how the taxpayer uses the property. The taxpayer must use the property as a qualified residence, meaning as their principal residence. That's a per-taxpayer analysis. It's not a per-residence analysis. And so the eligibility to claim deductions on acquisition and home equity indebtedness is completely dependent on how the taxpayer uses that residence. So if one taxpayer, so say that there were two people who owned the property, but only one of them was living there, so only one would be entitled to this, and the limitation would apply, and the other person couldn't take any deduction at all. So I don't see why that's a problem. Well, that's correct. But if you have a situation, like you're saying, that one person is not using it as their principal residence, that does not indicate that the other person who is living there, and as such, it is a qualified residence for that individual. There's nothing in this language that limits that co-owner, single co-owner, from applying. Yeah, so that person can apply up to the limitation of the amount of debt, you know, under that debt, and applies that ratio to the amount of interest he's paying. And the other person can't detect it because it's not a qualified residence. So that seems perfectly consistent with this language. Why does that make the IRS's interpretation wrong? Because the denominator that we're talking about here, the numerator is the $1.1 million, and the denominator in this instance, where you have a single taxpayer who has a qualified residence, is going to be that person's relative portion of the debt that they owe. Well, I understand that's your position, but I don't see that in the statute. I mean, it just says the aggregate amount is treated as acquisition and debt. And the language seems perfectly susceptible to saying the full amount of the debt on the house, regardless of how many owners there are. Well, under the joint and several liability argument, the third party could come and claim the amount, the full amount of the debt on the property. But if one person ends up paying less or more, the other person has a claim against that person to get the amount of money that they are entitled to, their half portion of the debt entirely. Well, I thought they were jointly and severally liable on the loan in this case, so that each one would be responsible for the entire amount of the debt. They are. So it was an undivided loan. It wasn't even like there were two loans, it was just an undivided loan, for which each was responsible for the whole amount. Well, that's right. But under state rules, which are what you apply in property questions, they each are responsible for the half portion of the debt. And so they would have claims against one another for taking more of the debt on their own deductions. I'd like to reserve the remainder of time unless there's further questions. Thank you. We'll hear from the government. Mr. Schuman. Thank you, Your Honor. May it please the Court. The tax court correctly held that the statutory limits on indebtedness apply with respect to the residences in question and cannot be multiplied by the number of joint owners of the property. Now, as you say, Your Honor, the tax code is not often plain, but I think in this instance it can be viewed straightforwardly if you apply the following syllogism. First, the limitations, as pointed out, are on the amount of indebtedness. Secondly, the indebtedness is with respect to the residence. Now, it's the residence of the taxpayer, but it's with respect to the residence. Therefore, the limitation applies with respect to the residence, not the taxpayer. Well, your argument is fairly easy to apply in this situation where you have the same multiple owners for both the principal residence and the second, the vacation home. But how do you apply it in a much, say take the scenario of you've got A, B, C individual taxpayers, each with their own individual principal residences and each with their own separate and varying amounts of principal mortgage on their principal residence. They go together and buy a vacation home. Now you have a joint ownership of a ski condo in Vail. How do you determine the denominator in that situation? Well, Your Honor, the situations can become much more complex than they are here. That's correct, and that would be a situation such as that. And that sort of situation is not covered by the chief counsel advice, which was the tax determination here. But you're asking us to apply a blanket rule that says principal residence. You can have all various, or the taxpayers in this case, one may want to go to the beach and say our principal residence is co-owned, and I'm going to buy a beach place with taxpayer C, and the other says I'd rather go to the mountains, I'm going to buy a So how do you deal with all those variations? It seems to me that your analysis is easy in the situation where you have the same co-owners for both residences, but it starts to break down when you have all the variations, which I think are very typical. I have many friends who have bought condos together to go skiing or go to the beach or wherever. Well, your honor, as I say, the situation here was an analysis from the IRS. It was based on its chief counsel advice. Do we have an obligation to defer to that? No, your honor. It's not as if it were a notice of comment regulation. Is there any administrative law principle that requires any deference at all to anything that the IRS has done here? No. Our review is de novo, so we just get to decide it as though we had never heard of the tax courts. The review is de novo, although I should point out that the ratio that we've been talking about, the denominator and the numerator, that actually is derived from treasury regulations. But for a different purpose, right? Yes, your honor. It was interpreted in the chief counsel advice. That's correct. But in this situation, and this is the only situation that the court has been called upon to address in the tax court, and of course this is the only one that's been appealed here, is one where the statute can be interpreted rather straightforwardly. The deduction is created in the definition of qualified residence interest, and there are two aspects of that. There's the acquisition indebtedness and there's the home equity indebtedness, and both of those are defined in the statute as with respect to any qualified residence of the taxpayer. Now, both elements of qualified residence interest must be with respect to the residence. The acquisition indebtedness is incurred in acquiring, constructing, or and is secured by the residence. Now, the flush language in that particular provision refers to when it's refinanced, and that's the situation here. And in the flush language, it says that it includes indebtedness secured by such residence resulting from the refinancing. There's no reference at all to the taxpayer. So I think taxpayers' interpretation is so far afield that you actually have to import language into that. Yeah, but the indebtedness, I mean, it's implicit there, isn't it? It has to be. Indebtedness of whom? The indebtedness has to be owed by somebody. Yes, there's still a taxpayer. There's still a tax being paid, but the calculation of the cap and the definition of the indebtedness, which relates to that cap, has nothing to do with the taxpayer individually. It's the indebtedness on residence. Well, that is the bottom line. Now, tell us how you get there, right? That begs the question. Well, Your Honor, there's just no reference to the taxpayer in that provision at all. In which provision? That is my point, yeah. In little 2? In little 2i? Yes. Well, in 3B little i 2, referring to the refinancing. And if Congress were trying to make this per taxpayer rather than per residence, they did it in a very curious way because they don't even mention the taxpayer when they're referring to refinance debt here, which is what's at stake in this case. The same is true in the statutory provision on home equity indebtedness. Although we would wonder to whom the indebtedness belonged if it wasn't to a taxpayer. If it wasn't to a taxpayer, we wouldn't be worried about this, would we? Sure. The taxpayers owe the debt. No question about that. And H itself begins with the words in the case of a taxpayer other than a corporation.  phrase at the beginning of the statute. Correct. Yes, that's to exclude corporate taxpayers. Right. That's the purpose of that. But when you actually get to the calculation methodology, there's no reference to a per taxpayer basis there. The term qualified residence interest means interest which is paid or accrued during a taxable year. Taxable years can vary from taxpayer to taxpayer, can't they? Yes, that's correct. In this case, they don't, Your Honor. Well, that's a happy coincidence for the IRS in this case. But if there were another case, this could be a lot more complicated, wouldn't it? It could be. I mean, there could be future chief counsel advice that would address a situation like that if it were to come up frequently. Since we're not obligated to defer to the chief counsel, we're not really worried about what the chief counsel might say in the future. No, Your Honor. I'm just pointing out that I think it would behoove us to allow the agency to address that in the first instance rather than trying to address this in a way that could be, as you say, much more complicated. Why is the parenthetical in these two little I's? Why is there even a parenthetical here related to a married individual's filing separate return? If we took that out, what happens? I think it's in there because it's addressing the issue of common ownership or joint ownership. And perhaps the most common example of that is a married couple filing jointly. That's a common example. As Judge Malloy reminds us, there are lots of other arrangements. And you told us that some of those get pretty complicated. Why is there a reference here to married individuals filing separately? And what happens if we take that parenthetical out of the statute? If you take that parenthetical out, you still have the focus on the residents, not on the taxpayer. I think it's an explanatory parenthetical. If it wasn't there, would the married couple filing separately have the same treatment as the taxpayers in this case, according to your interpretation? Your Honor, actually, I don't know. If the statute were drawn differently, you could reach a different result. Aren't you really saying that if it's a joint ownership, you're going to treat them as if they're married? We treat all co-owners the same, Your Honor, whether they're married or unmarried, yes. But they file different tax returns. If you're married, you get a much more advantageous tax rate, as opposed to the individuals in this case. So you don't treat them the same. Well, some married individuals may benefit from that, and some may not. Almost all of them are going to. If you make $500,000 filing as a single individual, you're going to pay a lot more tax than if you make $500,000 filed as a married. Everybody knows that, right? Right. So they're not treated the same. Well, I think a useful analysis here might be to compare Section 163, which is the section at issue here, with 121. It's referenced by the taxpayers because it's assumed in one of the statutes. 121 has to do with exclusion of gain. When you sell your house, a married couple can exclude up to $500,000, or if you're a single person, $250,000. Well, under 163, our provision, the limitation, we say, is per residence. Therefore, the married filing separately must divide that limit by two, as indicated in the statute. But under 121, as the taxpayers point out, the limitation is per taxpayer, not per residence. And it's drafted that way. And so there, under the statute, if you're married filing jointly, you can multiply the limit by two. So the individual gets $250,000, the married couple gets $500,000 as the exclusion from capital gain there. So that's how Congress deals with it when they want to make it per taxpayer rather than per resident. So I think the reason they do it here and in the parenthetical, I think, is to emphasize the fact that this is per residence and not per taxpayer. So the... What do you make of the argument in the amicus brief that both in H1, which is the general prohibition that talks about no deduction paid during the taxable year, and then under sub 3, it allows interest on a qualified residence paid during the taxable year. But residences don't have taxable years. Only taxpayers do. Well, that's correct, Your Honor. You still have tax liability accrued year by year. And that's the same for this provision as for any other provision of the code. And so that, I think, is an underlying principle of tax law that applies here as well as elsewhere. So I think that's just sort of background information under the code to indicate that this will be no different from any other code provision. Any other questions? If no further questions, I would request that the decision of the tax court be affirmed for the reasons set out in our brief. Okay. Thank you, Mr. Shuman. Ms. Kingston? To respond to the specific questions that are specific statements that were made by the government's attorney, I think Your Honors were correct. It is the taxpayer who is indebted here, not the residence. The residence simply acts as security for the debt. The residence can't make payments. It can't get its own loan. It can't do anything except sit there as security for the debt. Asking the question in response to, sorry, the answer to the question as to why the parenthetical language is there is because it recognizes the fact that a married taxpayer couple filing jointly are treated as one taxpayer and that parenthetical language indicates that they're only filing separately, they're only eligible for one half of the limitation still being one taxpayer. Whereas single individual taxpayers are treated as two, which is why the limitations here apply to each of these taxpayers up to the $1.1 million. Counsel, is there anything other than the fact that it's not advantageous to your client, is there anything absurd in the interpretation that the IRS has reached? Yes. Because... Where's the absurdity? The absurdity is exactly the circumstances that were raised by your honor that, for example, you have more than two. Here we have it very conveniently, just two. But when you have more co-owners who may have come into the debt at one or different times, different years, different periods, some of them may use it as their qualified residence and some don't. So how do you then put that all together? What difference does that make? Because it's just the ratio of the interest, which is deductible. You know how much each person has paid by way of interest, and so you just use the deduction. You may know or you may not. You have the limitation and the denominator is the total amount of debt. So I guess I don't understand why that would be difficult. Because you may or may not know... How much interest you pay? Yeah, how much some people are paying. Particularly if they're not living in the residence, not treating it as their own. They're not going to be eligible for the qualified residence. But you won't know unless you demand everybody share their information for being co-owners of a qualified residence. But more to the point, each individual taxpayer has their own qualified residence, and that's dependent upon how they use that property. If it's their personal residence, it is their own qualified residence. So a married couple treated as one taxpayer has their own qualified residence under the definition of how they use it. And a married taxpayer filing separately also has their own qualified residence, but because it's limited by one half in the specific language here, it makes a very clear distinction because there is no such reference to individual taxpayers in this limiting language. They each have their own qualified residence. They each are entitled, therefore, to claim up to the deductions on up to the $1.1 million. We would respectfully request that this court overturn the tax court's decision. Thank you very much. Thank you. Thank both counsel for the argument.
judges: Melloy, Bybee, Ikuta